KING, Respondent, v. LOUDERBACK et al., Appellants.

No. 1242; November 1, 1867.

**Ejectment—Right to Maintain.—A Person Who, Though Assert-**
ing some sort of claim to land, has never occupied it or used it for
any purpose, has no such possession as to warrant one assuming to
hold through him to maintain ejectment.

**Ejectment—Fence as Evidence of Possession.**—The mere fact
that a person at some past time indefinite erected a "fence" around
a piece of land, regardless of whether the structure was a substantial
barrier or only a fence by assertion, is in itself no evidence of posses-
sion, so that one claiming title through such person can maintain
ejectment.

APPEAL from Twelfth Judicial District, San Francisco
County.

Crane & Boyd for respondent; Haight & Pierson for appellants.

SAWYER, J.—After a careful examination of the testimony, we are compelled to say that we do not think the evidence sufficient to sustain the finding that plaintiff was seised in fee of an undivided half of block No. 48, and entitled to possession; or the finding that on the 27th of August, 1862, plaintiff was lawfully possessed of the premises in controversy, and that defendant, Louderback, entered and ousted him. Plaintiff deraigns title through a series of conveyances from one Thorne, but neither title, nor possession, was shown in Thorne. The only actual possession attempted to be shown was in Woolen, one of the intermediate grantors of the plaintiff, as long ago as 1853; and the evidence was insufficient, under the decisions of this court, and of our predecessors, to show possession in him. He never occupied, or in any manner used, any portion of the premises for any purpose whatever. There is no shadow of testimony to show occupation, or use. There was an attempt to show a fence made by Woolen, but it is of a very shadowy character; for it turns out on cross-examination in every instance, that although two or three of the witnesses saw a fence which they supposed was around the lot, they did not know it to have been constructed, or owned by Woolen otherwise than by hearsay from him. And the only specific description attempted of the fence seen by plaintiff's witnesses is that it "was an ordinary fence, made of scantling, with a rail on the top," which we understood to mean posts of scantling set in the ground, and one scantling rail on top. This is the fence spoken of by Nichols, one of the plaintiff's grantors who sold to Doble and Woolen. He says on cross-examination, "we did not fence the lot; Mr. Doble and his partner fenced it. I did not see them fence it, but they said it was their fence. Only know it from what they told me." Doble, being called by plaintiff, said: "There was nothing done with the property while I owned it. When Woolen owned it (Doble sold to Woolen) we put a fence around it, I saw the fence then." But on cross-examination he said: "I saw the land after it was fenced; I may have seen the fence very shortly after I sold; Mr. Woolen told me he fenced it, and I saw it fenced." Balentine saw the lot fenced

to Market street, but it was not fenced on Market street.    It was not the Baldwin fence.    He saw Woolen's men putting it up.    "I know they were his men, because he told me so."  Hayes spoke of the  lot that "Bryant, Sindle, and Nichols claimed, and that Woolen afterward fenced."    But on cross-examination he said, "I do not know to whom the fence belonged. . . . . I do not know if the lot was fenced in by Woolen or Baldwin; I only know that portion was fenced in."  This is the evidence as to fencing by plaintiff's grantors, and there is no question of any possession in plaintiff or his grantors, except so far as the evidence of fencing and claiming the lots tends to show possession.    On the contrary, the evidence is ample and uncontradicted that Elihu F. Baldwin was in the actual possession and occupation of the premises as early as 1853, 1854 and 1855.    In August of that year he had received a conveyance of a large tract embracing in the description the premises in question, but the premises in dispute were excepted by express terms of exception in the deed.  No interest in the premises, therefore, passed to him by the deed.    Yet the premises, so far as the testimony shows, were not then in the actual possession of any party, and he inclosed them by a fence with the rest and went into possession of the whole tract.    This appears from the testimony of Brown, one of plaintiff's witnesses, and of Baldwin himself.    Baldwin also testifies that he put a picket fence around the block in controversy, in December, 1853, and improved it; that he occupied  the  premises as a garden three or four years; that he cultivated a part on the 1st of January, 1855, and used a part as a farm yard for cows and chickens; that he continued to use it till they began to grade for the railroad  in 1857  or 1858; that Woolen attempted to fence it, and got up a line of fence along block 2, the block in question, another block and turned it toward block 1, but he, Baldwin, stopped him, and Woolen then went away; that no other attempt was over made to inclose it till Baldwin's brother put up  the  fence again after it was torn down by the railroad people.    And it was admitted as a substitute for their testimony that four other witnesses named would  testify to the same facts stated by Baldwin.    Baldwin also testified as follows: "I occupied the lot that was excepted from my deed for my brother, in December, 1853; I occupied it for my brother Judson Baldwin."

Clearly, under the former decisions, there was no actual possession shown in Woolen, even upon the plaintiff's own showing, certainly no sufficient possession to confer any rights under the Van Ness ordinance: Wolf v. Baldwin, 19 Cal. 307; Davis v. Perly, 30 Cal. 630. While the testimony does show actual possession and actual use for various purposes in Baldwin from December, 1853, down, that there is nothing to show that the continuity of the possession was subsequently broken. And it shows that the possession was held for and on behalf of Judson Baldwin. But if not, the possession started in E. F. Baldwin, and in 1859, more than five years before the commencement of this suit, he conveyed to Judson Baldwin, from whom defendants derive title.

It is true that Doble, one of the plaintiff's witnesses, states, that in 1853, he went to E. F. Baldwin, who was then in possession of the lot, and asked him if he claimed it, and Baldwin said he did not, that it belonged to Balentine and Nichols, and when one or two others inquired for Balentine and Nichols' lot, Baldwin pointed out this lot to them. But this does not tend to prove the actual possession in those parties, or out of Baldwin. It was then in Baldwin's possession, inclosed by his larger fence, if not by the smaller inclosure—the picket fence, made in December, 1853, as appears by the testimony of both Brown and Doble, plaintiff's witnesses. This act of Baldwin could only bear upon the question as to the time when his possession became adverse. If Woolen ever made the fence of posts and one rail on top, it must have been between the 24th of October, 1853, the date of Doble's conveyance to him, or more likely the 27th, the date of the acknowledgment, and the 28th of the same month, the date of Woolen's conveyance to Dow. At most he could have had but four days, probably but one, within which to make the fence. Balentine gives the most particular account of Woolen's fence of any of plaintiff's witnesses, and he says that the lot was "not surveyed and fenced on Market street, it was fenced to those I have just mentioned (Hayes and Market). . . . . It did not run quite up to Market street." It was then not fenced along Market street nor quite to it. The fence does not seem by plaintiff's own testimony to have been completed so as to inclose the block in dispute. And this accords with Baldwin's testimony that he stopped him before the work was

accomplished. It is quite probable that this is the true state of the case, and this may account for Woolen's conveying so suddenly to Dow. But if completed as before stated, it is still insufficient of itself to constitute a possession.

Baldwin was not estopped by his conveyances from Brown and Carey from acquiring title to the premises in controversy by possession, or otherwise, or from denying that the title was ever in Thorne or his grantors. His conveyance was, at best, but a quitclaim, and it did not purport to convey the premises in question. He did not enter upon the premises in controversy, under Thorne. The cases cited by respondent are inapplicable to the facts of this case.

Under the view we take the judgment must be reversed and a new trial had, and it is so ordered.

We concur: Sanderson, J.; Shafter, J.

I concur in the judgment: Rhodes, J.